343 So.2d 681 (1976)
STATE of Louisiana
v.
William Allen TASSIN.
Nos. 57800, 57801.
Supreme Court of Louisiana.
November 8, 1976.
On Rehearing February 28, 1977.
*682 Thomas W. Davenport, Jr., Davenport, Files, Kelly & Marsh, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Brian E. Crawford, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
On October 10, 1974, defendant, William Allen Tassin, was charged by bill of information with possession of marijuana with intent to distribute, a violation of LSA-R.S. 40:966, and, on January 20, 1975, he was charged by bill of information with possession of LSD, also a violation of LSA-R.S. 40:966. The defendant pleaded not guilty to both charges. The court denied a motion to suppress physical evidence in the marijuana case. An identical motion was denied in the LSD case. On May 7, 1975, the LSD case ended in a mistrial when the jury was unable to reach a verdict. On September 30, 1975, a second trial began on the consolidated charges. The jury returned a verdict of guilty as charged on the possession of LSD charge and a responsive verdict of guilty of possession of marijuana on the possession of marijuana with intent to distribute charge. The court sentenced defendant to pay a fine of $500.00 and to serve five months in jail on the marijuana conviction. On the LSD charge, he was sentenced to pay a fine of $1,000.00 and was placed on supervised probation for five years, with the condition of probation being that he serve one year in the parish jail. The five month sentence on the marijuana charge would run concurrently with the sentence on the LSD charge.
On appeal to this Court, defendant relies upon four assignments of error for reversal of his convictions and sentences.
On September 12, 1974, Detective Frank Bougere of the Monroe Police Department, on special assignment to the Morehouse-Ouachita Parish Strike Force, presented Judge Robert T. Farr of the Fourth Judicial District Court with an affidavit and application for a search warrant. Judge Farr signed the order issuing the search warrant and authorizing a search of the defendant's residence. Officers executed the warrant the same day at approximately 8:00 p. m. Arriving at defendant's residence, they found the apartment locked and unoccupied. Using a pass key furnished by the manager of the apartment complex, they gained entrance, and, during the search of the apartment, a quantity of marijuana, approximately fourteen clear plastic bags, two "window panes" of LSD, and a variety of drug paraphernalia were seized. The officers left a copy of the warrant in the apartment. The next day defendant surrendered at the Sheriff's office on the advice of an attorney.

ASSIGNMENT OF ERROR NO. 1
Here, defendant alleges that the trial court erred in failing to sustain the motion to suppress the physical evidence. Defendant challenges the sufficiency of the affidavit supporting the search warrant.
Louisiana Code of Criminal Procedure Article 162 provides:
"A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
"A search warrant shall particularly describe the person or place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search or seizure."
Our examination of the affidavit reveals the following facts: (1) the affiant's information came from a confidential informant whose reliability had been established in the past by his purchasing of controlled dangerous substances under the direct surveillance *683 of the affiant; (2) information given to the affiant by the informant had been verified through other reliable informants; (3) the informant in question knew the physical characteristics of marijuana, because the affiant had conducted positive field tests of the marijuana purchased by the informant under direct surveillance; (4) the informant had occasion to be present at the Tassin residence within seventy-two hours of the preparation of the affidavit and had observed personally a quantity of marijuana; and (5) the affiant was well acquainted with Bill Tassin as a user and dealer in controlled dangerous substances.
Our decisions, following the landmark case of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), hold that affidavits in support of search warrants must recite enough circumstances to provide a factual basis upon which a judge or magistrate may reasonably infer that the information is reliable; if an unidentified informant's services are utilized in providing information in support of a search warrant, there must additionally be presented to the magistrate circumstances adequately supporting the reliability of the informant. State v. Martin, La., 318 So.2d 25 (1975); State v. Humble, La., 309 So.2d 138 (1975); State v. Paciera, La., 290 So.2d 681 (1974).
The state and federal jurisprudence supports the view that probable cause for the issuance of a search warrant is a practical concept, which must not be unduly burdened with technical requirements. State v. Anselmo, 260 La. 302, 256 So.2d 98 (1971). In State v. Vince, 305 So.2d 916 (1974), quoting United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), we stated:
"They [search warrant affidavits] are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area."
In United States v. Townsend, 394 F.Supp. 736 (Mich. 1975), the court appropriately stated:
"The magistrate deals not in certainties, or even near certainties, but in probabilities. These are not technical, they are the factual and practical considerations of everyday life in which prudent men, not legal technicians, act."
Clearly, the police officer presented sufficient information for the judge to find that probable cause existed for issuing the warrant. Defendant has isolated and attacked each fact and circumstance presented to the court. However, one must consider the affidavit in its entirety in making a determination of probable cause.
In brief, defendant attacks Detective Bougere's affidavit statement that he was "well acquainted" with the defendant's narcotics usage and dealings. In questioning Bougere at the hearing on the motion to suppress, it was disclosed that Bougere had worked with this informant for three to four months and that three reliable informants had supplied information to Bougere concerning the defendant's drug related activities within thirty to forty-five days of the execution of the warrantfurther verifying the information provided by the reliable confidential informant. Defendant consistently equates the statement "well acquainted with" with personal knowledge. The affidavit does not recite that the officer had first-hand knowledge of Tassin's activity. We agree with the trial judge, that defendant's argument is one of semantics only.
Defendant also contends that no prior convictions had ever been obtained as a result of information provided by the reliable informant in the affidavit; hence, he asserts, the warrant could not issue on the basis of this information. There is no jurisprudential requirement that information provided by reliable informants in the past must have resulted in convictions in order to establish probable cause for the issuance of a search warrant. State v. Roach, La., 322 So.2d 222 (1975). Prior conviction is but one means of establishing the reliability of a confidential informant. As noted above, in the present case there were other *684 factors which tended to establish the informant's reliability.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends that the trial court erred in denying his motion for "surrebuttal" evidence during the trial on the merits.
According to the defendant, the State presented its case which consisted of the testimony of the several officers who had conducted the search of the apartment on September 12, 1974, identifying the various items seized and inventoried at that time, and the chemist who had performed the tests and analysis of the seized drugs. The State then rested.
The defendant then testified on his own behalf denying ownership, possession, or knowledge of the seized substances and stating that approximately a month prior to the search he had taken a ten-day vacation and had left his apartment key with a girl friend and that on his return he was given back an extra key apparently made for the use by an acquaintance of his girl friend. Defendant also testified that he had never used drugs of any kind. Several other witnesses testified for the defense.
On rebuttal, the State presented the testimony of defendant's former employer, a former fellow employee, both of whom testified to incidents indicating that defendant had previously used drugs. Additionally, the fellow employee testified to a threat made by defendant to commit suicide by the use of drugs.
At the conclusion of the rebuttal testimony, defendant moved to be allowed to put on surrebuttal testimony in the form of a witness apparently present outside the courtroom, who was under subpoena of the State. The court denied the motion.
Defendant contends that, despite the assertion by the State that the testimony of the two witnesses was offered on rebuttal only to refute defendant's denial of prior use of drugs, it was in fact proof of intent by prior use, LSA-R.S. 15:445-446, and, as such, should have been presented in the State's case in chief or, if presented after the defendant had rested, defendant should have been given the opportunity to respond. He argues that the denial of that opportunity was an abuse of discretion by the trial court.
LSA-R.S. 15:282, in pertinent part, states: "The prosecution has the right to rebut the evidence adduced by the defendant, but the defendant is without right to rebut the prosecution's rebuttal." However, Article 765 of the Louisiana Code of Criminal Procedure provides that after the presentation of evidence by the State and the defendant and by the State in rebuttal: "The court in its discretion may permit the introduction of additional evidence prior to argument." Since the matter is discretionary with the trial court, its ruling will be reversed only on a clear showing of abuse of discretion.
In State v. Dotson, 260 La. 471, 256 So.2d 594 (1971), dealing with the admissibility of evidence tending to show that defendant had previously used drugs after a defendant denied prior use, this Court stated:
"In State v. Monroe, 205 La. 285, 17 So.2d 331, we stated:
'Rebutting evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by the adverse party. State v. Hemler, 157 La. 902, 103 So. 257.
'It is rebuttal, not impeaching, to show that the statement of the witnesses as to what occurred is not true. State v. Foster, 150 La. 971, 91 So. 411. And contradiction is one of the means of rebutting the testimony of a witness produced by the defendant in a criminal prosecution as the State can not contradict the testimony of a witness for the defendant until the testimony is offered in defendant's behalf on the trial of the case. State v. Blount, 124 La. 202, 50 So. 12.'
"See also State v. Poe, 214 La. 606, 38 So.2d 359 (on rehearing); Marr's Criminal Jurisprudence of Louisiana, § 633, pp. 966-967 (1923).
"The evidence of prior use of marijuana was properly admitted to rebut or *685 contradict the defendant's testimony on an essential issue. We discern no error in the rulings of the trial judge."
We find no abuse of discretion on the part of the trial judge.
Assignment of Error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 3
Here, defendant argues that the trial court erred in prohibiting defendant from playing to the jury a tape recording that had been offered and filed as an exhibit in evidence.
This assignment of error has been adequately treated by the trial judge in his Per Curiam:
"On direct examination, able counsel for the defendant questioned the defendant about a `deal' that had been promised him if he would help the State Police with their efforts to investigate an accident that happened in Rapides Parish and which involved a person the defendant identified as Doyle Luno. The defendant testified that he was promised by Sergeant Elton Breaux of the Louisiana State Police that if he (defendant) would say that Luno had staged the accident that the charges against the defendant could be dropped because the District Attorney for Ouachita Parish owed Sergeant Breaux a `couple of favors.' (T. 46). The defendant testified that the next time he had a conference with `these people' (State Police) that he had a tape recorder on him and taped the conversation unbeknowing to the persons with whom he was talking. Defendant then testified as to what the conversation that was taped consisted of and further testified that he subsequently appeared before a Federal Grand Jury concerning this particular accident and testified truthfully before that Grand Jury as to the facts concerning the Luno accident and also told the Grand Jury about the insinuation and implications that Sergeant Breaux had tried to `force on him.' The taped discussion took place, according to the defendant's testimony on April 3, 1975 at 1:02 p.m. This taped conversation was defendant's exhibit number eight, which defendant counsel introduced into evidence, not at the time the defendant was testifying about same, but at the end of the case for the defense. (T. 130). This offering was allowed by the undersigned over the objection of the state solely for the purpose of showing that the tapes had in fact been made and existed. The defendant, as stated aforesaid, had already testified as to the contents of the tapes. At no time during the presentation of the defendant's case in chief did the defense attempt to play the tapes. Neither Sergeant Breaux nor Trooper Connella was called by the state to testify in an effort to contradict what the defendant stated was contained on the tapes.
"However, during the closing argument of defense counsel, he told the jury he was going to show them the tapes, namely, D-8. At that time the state asked if defense counsel was going to attempt to play the tapes during closing argument. In reply to the prosecutor's question, defense counsel replied that the jury was entitled to see the tapes to which the court agreed. Thereafter, defense counsel, in answer to the state's argument that the defense had every opportunity to play the tapes during the case of the defense in chief, decided he did indeed want to play the tapes to the jury during closing argument. The undersigned ruled that playing of the tapes at this time was not within the proper scope of closing argument. While defense counsel objected to the court's ruling he gave no reason for wanting the tapes played. The evidence of what the tapes contained was already before the jury by virtue of defendant's uncontradicted testimony and the undersigned had, as pointed out earlier, let the tapes be admitted into evidence solely to show that they existed."
As the trial court correctly noted, the playing of the tape at the time requested would have been improper. Article 774 of the Louisiana Code of Criminal Procedure provides:

*686 "The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
"The argument shall not appeal to prejudice.
"The state's rebuttal shall be confined to answering the argument of the defendant."
Assignment of Error No. 3 is without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant alleges that the trial court erred in deleting certain portions of the charge to the jury and in failing to instruct the jury pursuant to and as to LSA-R.S. 15:445 and 15:446 as requested by defense counsel.
The content of the deletions was adequately covered in other portions of the general charge to the jury.
Regarding defendant's request that the court read LSA-R.S. 15:445 and 15:446 to the jury, we note initially that the motion was correctly denied because the requested charges were not in writing and were not presented to the opposing party as required by Article 807 of the Louisiana Code of Criminal Procedure. Additionally, they were correctly denied because the pertinent portions of the statutes were adequately covered in the general charge to the jury. LSA-C.Cr.P. Art. 807.
Assignment of Error No. 4 is without merit.
For the reasons assigned, the convictions and sentences are affirmed.
DIXON, J., concurs.
TATE, J., dissented and assigned reasons.
DENNIS, J., dissented with reasons.
TATE, Justice (dissenting).
I respectfully dissent.
With regard to Assignment of Error No. 2, in the writer's opinion the trial court abused its discretion by failing to reopen the case to allow the "surrebuttal" testimony offered by the accused. Under La.C.Cr.P. art. 765(5), the normal order of trial is state evidence, defense evidence, and state rebuttal evidence; nevertheless, "The court in its discretion may permit the introduction of additional evidence prior to argument * * *."
The majority correctly holds that, in proper rebuttal, the state presented the testimony of two witnesses who testified, for the first time, as to incidents indicating that the defendant had previously used drugs. Even although this evidence, under the circumstances, was proper rebuttal, it for the first time introduced gravely prejudicial testimony as to factual incidents, which by the trial court's ruling, the defendant had no opportunity to rebut.
Under the "guilty knowledge" jurisprudence, see, e.g., State v. Smith, 257 La. 896, 244 So.2d 824 (1971), the state was entitled to introduce in its case in chief this evidence as to prior use, in order to prove the defendant's present knowing possession of an illegal drug. The state did not introduce this evidence in its case in chief, one would think, out of a commendable effort to rely upon its actual proof of present possession rather than to prejudice the trial jury by evidence concerning prior use (which only doubtfully is more-probative-than-prejudicial evidence of guilt of the present offense charged).
Had the state actually introduced this prior-use evidence in its case in chief, the defendant could have defended against its factual accuracy by producing evidence disputing these prior incidents. By the state's waiting to produce these prior-use incidents in rebuttal, it deprived the defendant of any chance to produce evidence disputing such prior use.
If the state intended from the first to use this prior-use evidence, it is apparent that it would be proper rebuttal against almost any defense presented by the defendant's evidence.
It is fundamentally unfair to permit the state to inject new factual issues by way of *687 rebuttal, without giving the defendant any chance at all to defend against themespecially when such evidence is normally part of the state's case in chief. To permit the evidence to be offered by way of "rebuttal", without permitting the accused to introduce additional evidence to dispute the new factual issues so injected for the first time, is to deprive the accused of a fair opportunity to defend against these newly raised factual issues. (See Uniform Rules of Criminal Procedure, Rule 521(5) (National Conference of Commissioners on Uniform State Laws, 1974).)
With regard to Assignment of Error No. 1, I am inclined to believe that the affidavit fails upon proof that the affiant, was not, in fact, well-acquainted with the accused as a user and dealer in controlled dangerous substances (as averred in the affidavit). At the hearing on the motion to suppress, it developed that, in fact, the affiant detective had only been informed by hearsay of such reputation by three anonymous informants. Generalized underworld gossip by faceless informers does not provide a sufficient basis to invade the home of an American citizen, Spinelli v. U.S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
For these reasons, I respectfully dissent.
DENNIS, Justice (dissenting).
The majority quite correctly states that, in reviewing questions concerning the constitutional requirements for obtaining a search warrant, we have in the past followed the landmark case of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). In that case the United States Supreme Court stated:
"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 [78 A.L.R.2d 233], the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825 [11 L.Ed.2d 887], was `credible' or his information `reliable.' Otherwise, `the inferences from the facts which lead to the complaint' will be drawn not `by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer `engaged in the often competitive enterprise of ferreting out crime,' Giordenello v. United States, supra, 357 U.S. [480] at 486, 78 S.Ct. [1245] at 1250 [2 L.Ed.2d 1503, at 1509]; Johnson v. United States, supra, 333 U.S. [10] at 14, 68 S.Ct. [367] at 369 [92 L.Ed. 436, at 440], or, as in this case, by an unidentified informant." 378 U.S. at 114, 84 S.Ct. at 1514, 12 L.Ed.2d at 729. (Footnote omitted.)
However, I believe the majority has strayed from the path of constitutionality in the instant case by failing to apply these principles to the facts recited in the search warrant affidavit. The affidavit, in pertinent part, stated:
"The reason for and facts in support of the issuance of the search warrant are: Within the last 72 hours your affiant has been contacted by reliable confidential informant whose realiablity [sic] has been established by direct surveillance buy [sic] said surveillance, made by your affiant. Reliable confidential informant has also provided your affiant with information in the past which has been checked and verified through other reliable confindential [sic] informants. The reliable confidential informant has purchased marjuiana [sic] in the past for your affiant which has been tested and proven genuine therefore the reliable confidential informant knows the appearance of marijuana.
"The reliable confidential informant has contacted your affiant and relaited [sic] the following facts within the last 72 hours the reliable confidential informant has had an occasion to be upon the premise of 2315 Fort Miro, Apartment 11A, Fort Oliver Apartment, Monroe, Louisiana. Reliable confidential informant *688 stated to your affiant that while at said resident reliable confidential informant did personally observed [sic] a quantity of marijuana on the premises. The reliable confidential informant also stated your affiant that said resident or apartment is occupied by one Bill Tassin. Your affiant is well acquainted with Bill Tassin as a user and dealer in controlled dangerous substances."
As I read the affidavit, it did inform the issuing magistrate of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, but it failed to inform the magistrate of any underlying circumstances from which he could determine that the officer reasonably concluded that the informant was credible or his information reliable. The informant, according to the affidavit, in the past had succeeded in purchasing marijuana under police surveillance. The affidavit is susceptible to the interpretation that the affiant officer observed one such purchase. However, the affidavit does not indicate the informant had ever given law enforcement officers information gained by him while not under surveillance that had been determined to be reliable by the officers. It does not necessarily follow from the fact that a person is an effective buyer of illegal drugs that he is a truthful individual or that his information about other persons is reliable. It is true the affiant officer stated the informant "gave him information in the past which had been verified by other reliable confidential informants." But the affidavit again fails to provide any of the underlying circumstances from which the officer concluded that these "other" informants were credible or their information reliable. Finally, contrary to the majority's opinion, the officer's assertion that he was well acquainted with the defendant as a drug dealer sets forth no facts for the magistrate to assess in determining probable cause, but merely the conclusion or opinion of the officer.
In my view the issuing magistrate did not have before him sufficient facts from which he could have inferred that the unidentified informant was credible or his information reliable. Instead, he issued the warrant on the basis of an inference drawn, not by himself as the constitution requires, but by the police officer, in contravention of the constitutional principles expounded in Aguilar and the other authorities cited in the majority opinion. Therefore, I conclude the search warrant should not have been issued because the affidavit did not provide a sufficient basis for a finding of probable cause and that the evidence obtained as a result of the search warrant was inadmissible in defendant's trial.
I respectfully dissent.

ON REHEARING
TATE, Justice.
The defendant was convicted of two narcotics possession offenses, which were consolidated for trial and appeal (as arising out of simultaneous possession), as is more fully set forth in our opinion on original hearing. There, we affirmed the convictions.
On rehearing, however, we now reverse these convictions. After further consideration, we now determine that the trial court erred in denying a motion to suppress the physical evidence. Assignment of Error 1.
We find that the evidence was seized pursuant to a search warrant improperly obtained. The basis for this holding is that the affidavit upon which the search warrant was obtained was constitutionally defective.

(1)
Article 1, Section 5, of our state constitution of 1974 guarantees every person affected by Louisiana law security of his person and property "against unreasonable searches, seizures, or invasions of privacy." This constitutional provision further requires that no warrant for a search of a person's property shall issue "without probable cause supported by oath or affidavit."
Our law requires that, before a search warrant is issued, the probable cause for *689 the search must be demonstrated to the issuing-magistrate by the affidavit of a credible person "reciting facts establishing the cause for issuance of the warrant." La.C.Cr.P. art. 162. (Italics ours.)
A search warrant may not be issued upon an affidavit reciting nothing more than the affiant's reasonable cause to suspect that the premises shelter contraband or evidence of crime. The affidavit must recite facts establishing to the satisfaction of the judge, not the affiant, that probable cause exists for issuance of the search warrant. If a search warrant is illegally issued by virtue of an insufficient affidavit, the evidence thereby illegally seized is inadmissible in a criminal prosecution.
See: State v. Paciera, 290 So.2d 681 (La.1974); State v. Holmes, 254 La. 501, 225 So.2d 1 (1969); State v. Wells, 253 La. 925, 221 So.2d 50 (1969).
The affiant may, however, establish the facts by his hearsay knowledge of them. However, if he does so, see State v. Paciera, cited above, at 290 So.2d 685-86, the affidavit "must set forth underlying circumstances and details sufficient to provide a substantial factual basis by which the magistrate might find reliable both the informant and the information given by him.
"Factors which support the credibility of an unidentified informant include prior accurate reports or any specific independent corroboration of the accuracy of the instant report. Factors which support the credibility of the information reported include (a) direct personal observation by the informant, or (b) if the information came indirectly to the informant, the reasons in sufficient factual detail for the magistrate to evaluate and credit the reliability both of the indirect source and of the indirectlyobtained information."
The credibility of the affiant's informant or the correctness of the information furnished by the informer may not be attacked on a motion to suppress. State v. George, 273 So.2d 34 (La.1973); State v. Anselmo, 260 La. 306, 256 So.2d 98 (1971), as interpreted by State v. Giordano, 284 So.2d 880 (La.1973) and State v. Melson, 284 So.2d 873 (La.1973).
However, as Giordano and Melson held, upon proper allegations and showing of a genuine issue of the falseness of the affidavit (as in the present case), allegations made by the affiant himself may be traversed as untruthful on the affiant's part. These decisions point out the constitutional and statutory reasons which cannot permit untrue ex parte allegations made by an affiant to be exempt from judicial inquiry.
Misrepresentation by an affiant cannot justify the invasion of an individual's home or his privacy, when there is in fact no true probable cause for the invasion. The constitutional requirement of prior probable cause for a governmental agent to invade a person's privacy or home cannot be evaded by the simple expedient of perjury by that agent.

(2)
Applying these principles to the affidavit used to procure a search warrant to invade the accused's home, we find:
The affidavit by the police officer attempts to establish probable cause for the search (a) upon the hearsay report to the officer of a confidential informant and (b) upon what on its face seems to be personal knowledge by the affiant that the accused was a user and dealer in illegal drugs. (The latter, as it turned out at the hearing on the motion to suppress, was actually unverified gossip elicited by him from anonymous informers.)
The affidavit, set forth in the margin below[1], establishes (a, b, c):

*690 (a)
A confidential informant told the affiant police officer that within 72 hours he had seen marijuana on the premises of the accused's apartment. This informant is shown to have knowledge of marijuana's characteristics, since he had purchased some marijuana in the past for the officer, which had been tested and found genuine.
The informant's eyewitness knowledge of marijuana on the accused's premises thus establishes the reliability of the information, assuming the credibility of the informant is also shown by the affidavit.

(b)
The reliability of the anonymous informant is sought to be established by (1) his having purchased illegal drugs in the past under the direct surveillance of the affiant police officer and (2) his having provided the officer in the past with other information (of unknown content) which was corroborated by other anonymous informants (characterized as "reliable" for reason not disclosed).
The reliability and veracity of an anonymous informer is not, in our opinion, pertinently reflected by his willingness to buy illegal drugs under the surveillance of a police officer for whom he works. The ability to traffic in illegal narcotics, under the immediate surveillance of a directing police officer, does not appear to be related to the informer's uncoerced probable truthfulness in securing outside of that officer's presence other information for the latter's use.[2]
Further, while other unidentified informants may have corroborated information (of unknown content) furnished by this informer to the officer in the past, this circumstance establishes neither the informer's reliability nor the reliability of the information shared by him with other unknown individuals in their unverified covert associations. Neither in the affidavit (nor in the suppression hearing itself, for that matter) does the officer state that the previous (unknown) information by his informer was independently verified, except by hearsay report from faceless tipsters.
On its face, accordingly, the affidavit does not demonstrate the requisite factual probable cause, based on shown reliability of informant and information. To justify the invasion of an individual's home, the officer's strong suspicion of unlawful possession required some independent factual corroboration beyond the report of an informant working in the underworld of the narcotics traffic, corroborated as to his personal truthfulness only by the hearsay report of other individuals similarly engaged and of unknown truthfulness themselves.

(c)
The affidavit concludes: "Your affiant is well acquainted with Bill Tassin as a user and dealer in controlled dangerous substances." The motion to suppress specifically traversed as untruthful this allegation.
At the hearing on the motion, the affiant police officer admitted that he had never himself seen or observed Tassin using or distributing illegal drugs. He and Tassin knew one another well, having taken law *691 enforcement courses at college together. Tassin, a former law enforcement officer, now worked as an insurance adjuster in the same city as the affiant officer.
In explanation of the misleading (if not deliberately inaccurate) statement, the police officer stated that within 30-45 days of the affidavit he had received information from two of his confidential informants about Tassin "involving narcotics." (We may say that, so far as the record indicates, Tassin may have personally used narcotics during periods in his life, but that the information he had dealt in them is completely false.)
This is an unsatisfactory basis upon which to establish any factual indicia of probable cause. Generalized underworld gossip by faceless informers does not provide a sufficient basis to invade the home of a person living under the protection of the Louisiana constitution.
Further, even if reliable, information that a suspect has engaged in illegal activity cannot by itself justify an intrusion into his home at the whim of governmental officers. The assertion of the suspect's reputation for past criminal activity, unrelated to specific incident giving probable cause for a search, "is but a bald and unilluminating assertion of suspicion that is entitled to no weight in appraising the magistrate's decision" to issue a warrant. Spinelli v. United States, 393 U.S. 410, 414, 89 S.Ct. 584, 588, 21 L.Ed.2d 637 (1969).

(3)
The affidavit, as we have analyzed it, is solely based upon a report of an unidentified informer, not shown to be himself reliable, and upon generalized derogatory information concerning the accused elicited from two or three other unknown informers of unknown reliability (who were themselves engaged in narcotics activity). Probable factual cause, not underworld gossip, is required by our state constitution before governmental agents may invade the privacy of an individual living under protection of that constitution.
Accordingly, we conclude that the evidence seized in the accused's apartment was the product of an unconstitutional search. The motion to suppress was incorrectly denied, the evidence was improperly admitted, and the convictions and sentences must be reversed and set aside.

(4)
Brief mention should be made of Assignment 2, however. By this, the defendant complains of the denial of an opportunity to counter "rebuttal" evidence introduced by the state.[3]
Some members of the court feel that a serious issue for reversal is presented by the failure to allow the accused to counter the state testimony insofar as it exceeded the scope of proper rebuttal (see footnote 2). Nevertheless, we have determined that it is unnecessary to decide this issue (or whether the state's testimony was indeed proper rebuttal at all), since the issue almost certainly will not arise on a re-trial.

Decree
For the reasons assigned, we reverse the convictions and sentences, and we remand for new trials in accordance with law.
REVERSED AND REMANDED.
SANDERS, C. J., dissents adhering to the views expressed on original hearing.
*692 MARCUS, J., dissents adhering to views expressed in original opinion.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting from the opinion on rehearing).
Rehearing was granted to reconsider two issues presented on this appeal: the contention that the trial judge erred in issuing a search warrant upon an inadequate affidavit; and the failure of the trial judge to allow the defense to present surrebuttal evidence following the introduction of rebuttal evidence by the State.

I.
The search warrant in question particularly describes the place to be searched, the things to be seized and the purposethat is, to seize controlled substances, "especially but not limited to marijuana." The only controverted question remaining, therefore, is whether probable cause was established to the satisfaction of the judge by a credible person reciting facts establishing the cause for issuance of the warrant. Const. art. 1, § 7 (1921); La.Code Crim.Pro. art. 162.
The application for rehearing on this issue principally relies upon the contention that the affidavit was "intentionally inaccurate." Affiant's statement that he was "well acquainted with Bill Tassin as a user and dealer in controlled dangerous substances," which this Court accepted, is erroneous according to this application for rehearing. The application sets forth that the statement is not founded on personal knowledge of the affiant or on information received from informants whose reliability is established by the affidavit. Thus, it is urged, the affidavit is a misrepresentation, or, at least, "unintentionally inaccurate." As such, the applicant contends, the affidavit cannot support the issuance of the warrant, and the trial judge should have sustained the motion to suppress evidence seized upon that authority.
Even if it be conceded for argument's sake that this statement by the affiant was intentionally or unintentionally inaccurate, the affidavit will nevertheless support a finding of probable cause for issuance of the search warrant.
Affiant, who the judge found to be a credible person, concluded in the affidavit that the narcotics were at the designated address from the recent information he received from the confidential informant to the effect that he, the informant, had "personally observed" a quantity of marijuana on the premises. With this information, the judge who issued the warrant needed only to ascertain from the affidavit whether it set forth "the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed,. . . was `credible' or his information `reliable.'" Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
Reliability of informants in these drug cases may be established by their previous cooperation with law enforcement authorities. Here the affidavit set forth that the reliability of the informant had been established by a "direct surveillance buy," that is, made by the informant, affiant having observed the transaction personally. Also, the informant had, according to the affidavit, provided affiant with information in the past which was checked and verified by other confidential informants. And, further, informant had purchased marijuana for affiant, which had been tested and proven genuine. All of these activities on the part of the informant were such that he had become "reliable" and "credible", indicating by his action a tendency to cooperate with law enforcement.
From these facts, plainly set forth in the affidavit, the judge could also infer that the informant was "credible" and "reliable". Aguilar v. Texas, supra. The credibility and reliability looked for in these cases is that which is considered worthy of belief by the police in their effort to suppress illegal drug traffic. Information of this nature must, of necessity, often be obtained from *693 those who participate in this covert realm of illicit conduct, either as addicts or paid informers. In either instance the standard of credibility or reliability is that which produced results in the past and must be judged in this context by the magistrate issuing the warrant.
Realizing the role these circumstances play in the determination, the cases, both state and federal, support the view that probable cause for the issuance of a search warrant is a practical concept which should not be unduly burdened with technical requirements. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); State v. Nix, 327 So.2d 301 (La.1976) cert. denied 425 U.S. 954, 96 S.Ct. 1732, 48 L.Ed.2d 198 (1976); State v. Luneau, 323 So.2d 770 (La.1975); State v. Paciera, 290 So.2d 681 (La.1974); State v. Anselmo, 260 La. 306, 256 So.2d 98 (1972), cert. denied 407 U.S. 911, 92 S.Ct. 2438, 32 L.Ed.2d 685 (1972).
"As Spinelli [Spinelli v. U. S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637] observed, `in judging probable cause magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense' and `their determination of probable cause should be paid great deference by reviewing courts.' 393 U.S. 419, 89 S.Ct. 590. Further, where the law enforcement officers have respected the constitutional mandate to secure a warrant before searching, `[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Ventresca v. U. S., 380 U.S. 102, at 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684. See also Jones v. United States, 362 U.S. 257, at 270, 80 S.Ct. 725, 735-736, 4 L.Ed.2d 697." 290 So.2d at 687. State v. Paciera, supra.
Applicant's contention is unduly technical. The trial judge had probable cause to issue this search warrant.

II.
The contention that the trial judge erred by failing to allow the defense to present surrebuttal evidence after the State introduced evidence in rebuttal is also without merit.
After defendant testified on cross-examination that he had never smoked marijuana, the State introduced rebuttal evidence (which raised the inference that defendant used other drugs), such as, testimony that adhesive tape was noted on defendant's arm at a time when he was drowsy and disoriented (implying an intraveneous injection of a narcotic drug), and testimony that he had threatened suicide by taking an overdose of drugs. Defendant was granted ample opportunity and latitude to cross-examine these State witnesses.
Conceding that surrebuttal was not provided for, defense counsel sought nonetheless to call one witness for very brief testimony on surrebuttal, a witness who had been subpoenaed by the State and who was then in the hall outside the courtroom.
As a general proposition, the defense has no right to rebut the prosecution's rebuttal. La.Rev.Stat. 15:282. However, the court in its discretion may permit the introduction of additional evidence prior to argument. La.Code Crim.Pro. art. 765(5).
In my view the State's briefly outlined evidence was proper rebuttal to defendant's disclaimer that he had never smoked marijuana. A reasonable inference may follow from the use of narcotic drugs that the user has smoked marijuana. It would only be where the State's rebuttal was improper that the defense would be entitled, in the court's discretion, to surrebuttal.
Under the circumstances of this case, the trial judge did not abuse his discretion.
I would affirm the conviction.
NOTES
[1] The affidavit, in pertinent part, states:

"The reason for and facts in support of the issuance of the search warrant are: Within the last 72 hours your affiant has been contacted by reliable confidential informant who realiability has been established by direct surveillance buy said surveillance, mady by your affiant. Reliable confidential informant has also provided your affiant with information in the past which has been checked and verified through other reliable confidential informants. The reliable confidential informant has purchased marjuiana in the past for your affiant which has been tested and proven genuine therefore the reliable confidential informant knows the appearance of marijuana.
"The reliable confidential informant has contacted your affiant and relaited the following facts within the last 72 hours the reliable confidential informant has had an occasion to be upon the premise of 2315 Fort Miro, Apartment 11A, Fort Oliver Apartment, Monroe, Louisiana. Reliable confidential informant stated to your affiant that while at said resident reliable confidential informant did personally observed a quantity of marijuana on the premises. The reliable confidential informant also stated your affiant that said resident or apartment is occupied by one Bill Tassin. Your affiant is well acquainted with Bill Tassin as a user and dealer in controlled dangerous substances."
[2] For instance, the present record contains substantial evidence that, after the arrest of the present accused himself on narcotics charges, law enforcement officers offered to drop these charges if he would cooperate with them in making cases against other suspects.
[3] Under cross-examination by the state, the accused denied he had ever smoked marijuana in his apartment. In alleged rebuttal, but cf. State v. Ghoram, 290 So.2d 850 (La.1974), the state then introduced the testimony of a girl he worked with and whom he had dated, that the accused had smoked marijuana with her one time, that he had admitted a prior use of drugs, and that he had written her a suicide note, the contents of which she testified to from memory. The state also introduced the testimony of the accused's employer (who stated that he was an excellent employee) as to an ambiguous incident when the accused was sick at work, at which time the use of marijuana was discussed, without the accused either admitting or denying his use of it.